ZADOCK C. BAKER *et al.*, plaintiffs in error, *vs.* THOMAS MC-GUIRE, defendant in error.

(TRIPPE, Judge, was providentially prevented from presiding in this case.)

1. Where a proprietor of lands erects a mill upon his premises, and, by a dam, flows water over land above the mill, and he, dying, the land is sold in parcels to several persons, the vendee of the mill tract retains the right to keep up on his land a dam of equal height with that which was upon it at the time of his purchase, and to back the water according to the capacity of the dam.

2. When a mill-dam of a certain height exists, and with it, the right to back water upon land according to the capacity of the dam, and from want of repair, or leakage of the dam or other cause, the dam does not gather such a head of water as it might, and thus the back-water is usually less than the height of the dam would warrant, the owner of the mill has a right to build a new dam of the height of the old one, or to repair the old one, and if thus the extent of the back-water is increased, the owner of the mill is not liable for damages caused by the increased overflow.

Land. License. Riparian rights. Before Judge HOPKINS. DeKalb Superior Court. March Term, 1874.

Thomas McGuire brought case against Zadock C. Baker and Bradford Humphries for $5,000 00 damages, sustained by reason of the backing of the water of "No Business" creek on certain lands of the plaintiff, situated in the counties of DeKalb and Gwinnett. The defendants pleaded the general issue, and set up title in themselvs to a portion of the land alleged to have been injured.

The following brief statement of facts as presented by the testimony, is sufficient to an understanding of this case:

Forty-five or fifty years ago Zachrey Lee built a mill and dam upon property then owned by him. After his death, to-wit: in November, 1863, the tract of land upon which said dam was located was divided into parcels and sold by his executor. Zadock C. Baker bought that portion upon which the mill and dam were situated. Bradford Humphries was simply interested with Baker in the mill. The plaintiffs hold their land under the same sale. Baker built a new dam in July or August, 1871.

There was evidence tending to show that since the erection of the new dam the back-water had been considerably increased, thus damaging the plaintiff. There was also testimony to the effect that this result was not due to the dam, but to other causes beyond the control of the defendants. The defendants and other witnesses, testified that the new dam was of the precise height of the old, and that if the back-water was thereby increased, it was due to the fact that the former was leaky, or out of repair, or for some other cause, did not accumulate the head of water which its height would justify; that the new dam would produce no greater effect upon the water than the old one, in proper condition, would have done.

The jury found for the plaintiff $1,920 00. The defendants moved for a new trial upon the ground, that the damages were excessive, and because the court erred in charging the jury, "that the defendants had no right, by their dam, to back or make the water in the pond higher than was customary or ordinarily the case with the the old dam;" and in defining or explaining the efficient height of the dam to be, "the height at which it was capable, as ordinarily used, of raising the water."

The court ordered a new trial unless the plaintiff would write off from their verdict $1,620 00. This was done, and the defendants excepted.

GARTRELL & STEPHENS; HILLYER & BROTHER, for the plaintiffs in error.

M. A. CANDLER, for defendant.

McCAY, Judge.

1. We do not go into the evidence in this case. The judge below was, himself, satisfied that the verdict was excessive, and has put the plaintiff below upon terms. We find some difficulty, it is true, in discovering what rule the judge adopted in finding how much ought to stand and how much ought to be written off. We cannot, however, refrain from saying

that, as the facts appear in the record, it is impossible to agree with the opinion of the witnesses that the dam caused the overflow above the riffles and running water, and almost all the witnesses say, there was running water and riffles below the overflow in the upper field. How a dam can back water *beyond* and above a current, we do not see, unless the water is governed by some laws peculiar to "No Business" creek.

2. But our judgment of reversal is upon what, in our opinion, was an error in the charge of the court. This mill, and a dam to raise the water to run it, was built by old Mr. Lee, the original proprietor of the land owned by both parties. At his death it was sold at administrator's sale, in two parcels, on the same day. The rule is well settled that the vendee of the mill tract got all the easement of the mill and dam, got the right to flow water, as the dam was capable of flowing it, and that the adjoining land went to the purchaser of it with that servitude upon it: See Washburn on Easements, 43, 60, where this whole doctrine is discussed. The rule seems equally well settled that the capacity of the dam from its height is the measure of the easement. Sometimes a new dam leaks greatly, sometimes a dam gets out of repair and leaks, sometimes the use of the water, by night and by day, or with a peculiar wheel, keeps the water at a low ebb; and these failures to use a dam to its full height continue for years. But the doctrine seems to be well settled, that the right of the mill owner is not lost by the leakiness of his dam, or by the steady and constant use of the water. He has a right to repair his dam or build a better, though not a higher one. He has a right, too, by the use of better wheels, or by doing less work, to save his water, and if in either of these ways the water in the dam is kept at a higher point, and the back-water is carried higher up the stream, he is still only using the easement he bought and of which the other vendees had full notice, by the height of the dam : Conell *vs.* Thayer, 5 Metcalf, 253, 258 ; Alder *vs.* Savill, 5 Taunton, 454 ; Lacy *vs.* Arnett, 33 Penn., 169 ; 29 N. Y., 354. And we think this a fair and reasonable rule, one tending to en-

courage improvement, and one doing no harm, as the height of the dam and its efficiency, are matters the other vendees might easily know and take into consideration on their purchase. Under the charge. of the court, the plaintiff in error was confined to the flow of water, as it usually flowed, though there was testimony that the old dam leaked badly, and that the new dam was no *higher* than the old one. It seems to us absurd to say that the purchaser of the mill tract, had no right to repair the dam, however long it might have been out of order, and that he was driven to build a new dam of the same inefficiency. We think, under the evidence, the jury might have found differently, had what we take to be the true rule on this subject, been submitted to them, and for this reason we reverse the judgment.

Judgment reversed.