Ellington *et al. vs* Bennett.

Z. T. ELLINGTON *et al.*, plaintiffs in error, *vs.* CAMILLUS E. BENNETT, defendant in error.

1. In order for the plaintiff to recover in an action for overflowing his land by the defendant's mill dam, he is not obliged to prove special damages. If his right has been illegally invaded, he may recover nominal damages for its vindication.

2. The damages to be recovered as rents and profits, especially where some of the land overflowed is uncleared, are not restricted to net, clear profit, over and above all expenses—the net gain that an owner would derive from land in its condition. The jury should regard the capabilities of the land for more profitable use in a changed condition; and also the obstacles to change presented by the nuisance complained of. Keeping up the nuisance should not be a means of keeping down the rent.

3. Prescription, as the foundation of a right to overflow the land of a stranger, depends, not upon the height of the dam, but upon the reach and elevation of the back water; not upon what the dam was capable of, but upon what it performed.

4. Damage from charging and saturating the soil with back-water not rising above the surface, may be recovered when sued for and established. But a request to charge on the subject, was properly refused because too comprehensive.

Damages. Mill-dam. Nuisance. Prescription. Charge of Court. Before·Judge BUCHANAN. Fayette Superior Court. August Term, 1876.

Report unnecessary.

SPEER & STÉWART; BOYNTON & DISMUKE, for plaintiffs in error.

R. T. DORSEY, by HOPKINS &. GLENN, for defendant.

BLECKLEY, Judge.

· 1. This was an action for overflowing land by means of a mill-dam. The court charged the jury that "the damage which the plaintiff would be entitled to recover, if he is entitled to recover any at all, are special damages, and must be proved; they must be proved in order to entitle the plaintiff to recover." It is more than probable that, under instructions so definite and positive, the jury would understand that they could not give even nominal damages without some amount of actual damage was established by the evidence. The Code, in section 3070, declares that "general damages are such as the law presumes to flow from any. *tortious* act, and may be recovered without proof of any amount." It declares also, in section 3065, that "if the ·injury be small, or the mitigating circumstances be strong, nominal damages only are given." The court seems to have read these provisions as a part of the charge, but they were lost sight of when the final rule for the government of the jury was announced in the language above quoted. The meaning of the court appears to have been that, *in this case*, there could be no recovery except for special damages. But, according to the authorities, the case is of a character to require a verdict for at least nominal damages for the vindication of the plaintiff's right, if the jury should believe that there was an illegal invasion of his property, though the damage might

be inappreciable. 4 *Ga.*, 241; 18 *Ib.*, 539; Angell on Watercourses, sections 331, 428, 430, 432; Wood on Nuisances, section 857. There was nothing to the contrary of this position meant by anything said or decided in 54 *Ga.*, 459. The verdict there was not rendered on the basis of nominal damages, but of actual damages to a considerable amount, and this court would not uphold *such* a finding without evidence to show the extent of the overflow, or to indicate the amount of the damage occasioned thereby. "For every injury done by another to person or property, the law gives a right to recover, and a remedy to enforce it." Code, section 2243.

2. Another part of the charge of the court complained of, was to the effect that the recovery, so far as rents, issues and profits were concerned, ought to be restricted to the net clear profit, over and above all expenses—the net gain that an owner would derive from land in its condition. This rule, applied to the uncleared land, would make it rent-free, or might do so. If the owner could render his land more productive by changing its condition, were it exempt from the nuisance complained of, he ought to be allowed to charge for the use of it with some reference to its capabilities. Precisely how far that element should go to increase the rental beyond what the occupation of it would be worth as mere woodland, should be left to the jury under all the facts and circumstances of the case. The main injury to the owner in the matter of rents and profits, might be that he is prevented by the nuisance from putting the land in a condition to yield a net income, or, indeed, any income whatever. As it is, it may be dead capital, and the real grievance may be that the defendant's wrong-doing keeps it so. If the plaintiff, without his consent, is to furnish the defendant with land to be overflowed by the defendant's mill-pond, the compensation in damages should, perhaps, be equal, at least, to the lawful interest upon the value of the land so overflowed, computing the value at not less than it was when

the overflow took place. Where the defendant's wrongful act excludes the plaintiff entirely from any enjoyment or profitable appropriation of land which belongs to the plaintiff, though the land be in no condition to rent out or yield a profit, the defendant cannot rightfully or reasonably object to paying, by way of rent, interest upon its value. Of course, where the plaintiff's enjoyment of the property is not interfered with to the extent of total exclusion from any part of it, a part yielding, or still capable of yielding profit, should not be counted against the defendant at the full rate. An adequate percentage should be deducted, the jury making the apportionment according to the apparent justice of the case. In adverting to interest as a measure of rent, where no other is practicable, we are not ruling that the law prescribes it, but that the law permits it. The jury should not be cut off from it as a means of arriving at the actual damages. And, after all, in the absence of circumstances of aggravation, the actual damages will be the measure of recovery.—Code, section 3065 ; 47 *Ga.*, 260. We guard our observation as to interest still further by saying, that in the present case the evidence was, perhaps, not full enough to enable the jury to take interest into consideration. But, we think, the court should have given in charge a more liberal rule as to rent than the one given—a rule that would have allowed the jury to regard the capabilities of the land for profitable production in a changed condition, if the change was rendered impracticable or more difficult by the nuisance complained of. The charge of the court did not confine the jury to rent as the only element of special damage, but gave them full scope to consider all other matters of special damage which the evidence might be found to establish. It is possible that the presiding judge may have intended this enlargement of the inquiry as reaching to some or all of the circumstances which we treat as bearing on the question of rent. He seems, however, to have repeated, with emphasis, that the profit to be allowed as damages was net profit—net gain

on the land in its actual condition.  In our opinion, the charge was erroneous.

3. If we do not misunderstand the evidence as it bears on the subject of prescription, there was nothing to call for any charge whatever on that subject.  The mill and the plaintiff's land never belonged to the same person, as was the case in 53 *Ga.*, 245; nor did an easement to flow any of the plaintiff's land have a beginning in a known grant, as was the case in 54 *Ib.*, 459.  We do not observe in the record any evidence that the ancient dam backed the water upon the plaintiff's land at all.  The evidence is so voluminous, that a further study of it may be requisite to arrive at the exact truth on this point; but it is not necessary that we should sift it in order to lay down the rule that must govern the case on the element of prescription.  We notice that there is evidence tending to show that the plaintiff's land became affected by the dam, for the first time, in 1867 and 1868.  Grant that to be so, whether it was the first dam or the second, and whether the dam now complained of be higher than the ancient dam or not, there can be no right by prescription.  For it is not the height of the *dam*, but of the *water*, that injures the plaintiff.  Until the water was raised so as to inflict damage on him, he had no right of action, and, of course, not until then did any prescription begin to run as to him.  Twenty years from that time would be requisite to complete the prescriptive period, and bar him from controverting the easement.  Suppose, however, that some of the plaintiff's land had been overflowed by the dam for twenty years, that would confer no easement to overflow more of it by the same dam, or by a new dam of the same height.  The doctrine of tightening a dam, announced in 53 *Ga.*, 245, is not to be applied in such a case as this.  There, there was privity of estate; here, there is none.  Because a man submits for twenty years to have an acre of his land covered by back-water, must he submit, the twenty-first year, to have two acres covered?  Suppose the dam,

without being raised any higher, should become sufficient to throw the water back into his house, must he move out? The true rule as to prescription is, that the right is measured by actual user, and not by capacity for more extended use. 51 *Ga.,* 378; 25 Penn., 519; 52 N. H., 262; Angell on Watercourses, § 379; Wood on Nuisances, sections 420, 422, 704. And the right does not begin to run until an actionable injury has been inflicted. *Ib.,* § 706.

4. A request by the plaintiff was made to charge the jury touching damage to the land by percolation or seeping. Injury by charging and saturating the soil, without overflowing the surface, if caused by the dam, would certainly entitle the plaintiff to redress, if sued for. Wood on Nuisances, section 120. But it would be best to set forth that form of injury distinctly in the declaration, so that the defendant might be prepared to meet it. The request, as set forth in the motion for new trial, was too comprehensive. It sought to make the defendant responsible for backing water "up to or near the line of plaintiff's land." Unless the back-water came in contact with the plaintiff's soil, the consequences were not within the scope of the present action. There was no error in refusing the request.

Cited for plaintiff, Code, sections 2218, 2227, 2231, 3013, 3018, 3020, 3065, 3070, 3071, 3073; Wash. on Easements, top pages, 294, 295, 328, 329, 659; 7 Gray, 194; 10 Cush., 191; 16 Pick., 241; 19 Wend., 309; 24 Ala., 130; 7 Mo., 307; 17 Conn., 288; 34 Ala., 553; 3 Vt., 308; 17 Barb., 654; 4 *Ga.,* 241; 40 *Ib.,* 94; 43 N. H., 569; 42 Penn., 67; 9 Pick., 59; 5 Ohio, 320; 2 Green Ch., 25; 7 Watts and S., 9; 17 Texas, 590; Wood on Nuis., 319; Sher. and Red. on Neg., § 575, *note* 1; Angell on Water-courses, § 523, *note.* For defendant, 54 *Ga.,* 84, 459; 53 *Ib.,* 245; 56 *Ib.,* 353; 51 *Ib.,* 582.

Judgment reversed.