## TRASK *versus* FORD *& al.*

The *lessee* of real property when establishing title may use as evidence an *office copy* of the recorded title deed of his lessor.

One claiming by possession the prescriptive right to abut his mill-dam upon the opposite shore, must show such possession adverse and exclusive for twenty years prior to the commencement of the action.

Merely abutting one's mill-dam upon the opposite shore, without claim of right, may create an easement after its continuance for twenty years, but will not divest the owner of the shore of his title.

Such acts are assumed to be in *submission* to the title of the owner, unless they appear to be *adverse.*

When such dam is joined to the opposite shore by consent of the owner, its materials belong to the builder of the dam.

And while the dam remains, the owner of the opposite shore may so interfere with it as to enjoy his rights, but not to appropriate any of the materials to his individual use.

To maintain an action of trespass *quare clausum* against the owner of the opposite shore for intermeddling with his dam, the owner of the latter must show the prescriptive right by *adverse* occupation for twenty years.

ON REPORT from *Nisi Prius,* CUTTING, J., presiding.

TRESPASS, *quare clausum.*

This action was commenced on April 19, 1853. . The writ contained counts for breaking, entering and carrying away a dam; also for breaking up plaintiff's dam and diverting the water from his mill; also for tearing up and carrying away his boards, planks and a chain.

After the evidence was out, it was agreed, that the Court, upon so much of it as was admissible, might draw such in-

Trask *v.* Ford.

ferences as a jury might, and render such judgment as the law required.

The titles of the parties are stated in the opinion of the Court.

The evidence showed, that the dam across Dyer's river had been built about forty years; when first built, a fulling mill was erected on the north side of the river, and about twenty years after a grist-mill was erected on the same side, which has been in operation ever since, and used by the plaintiff.

To the shore on the south side, upon which the dam abutted, the plaintiff had no record title. On that side was a waste way. The owner of the land and shore on that side leased the same with the privilege to defendants, and they erected a store and lathe mill, built a flume and joined it to the dam in the place of the waste way, and so altered it as to draw the water from the dam to drive their mill. None of the materials of the dam were used in or about the mill; the chain of plaintiff which was upon one of the pieces of the bulk head, was removed as it was necessary to move the post, but was left upon the dam. There was evidence tending to show, that prior to the date of the writ, there was no lack of water to drive the mills on both sides of the stream.

The plaintiff claimed his right to abut his dam on to the opposite shore by prescription.

*Lowell, Thacher & Foster,* for defendants.

1. Allowing the plaintiff had the exclusive right to the water power created by the dam, this action cannot be maintained, as he had suffered no injury when the writ was made. *Curtis* v. *Jackson,* 13 Mass. 507; *Rogers* v. *Bruce,* 17 Pick. 184; *Bonley* v. *Shaw,* 6 East, 208; 3 Kent's Com. 7th ed. p. 539.

2. But plaintiff is precluded from setting up any title by prescription, for his occupation was not adverse, but in submission to the title of defendant.

3. The office copy of the deed objected to was admissi-

ble. *Kimball* v. *Morrill,* 4 Maine, 368; *Emery* v. *Vinal,* 26 Maine, 295.

*Ingalls,* for plaintiff, in support of his prescriptive right as to his dam, cited *Bliss* v. *Rice,* 17 Pick. 23; *Melvin* v. *Whitney,* 10 Pick. 295; *Hill* v. *Crosby,* 2 Pick. 466; Angell on Water Courses, §§ 208, 217; 3 Stark. Ev. 1215; *Com.* v. *Low,* 3 Pick. 408; *Coolidge* v. *Leonard,* 8 Pick. 504.

He also contended, that the introduction of the deeds by defendants did not change plaintiff's rights.

The office copy of the deed objected to was not admissible, as the defendant justified under it.

The evidence showed an invasion of plaintiff's rights and in any event he was entitled to nominal damages.

Even if defendants were justified in removing the planks from the dam, they should have been restored to plaintiff, not put upon the premises of defendants.

TENNEY, J. — The plaintiff alleges in his writ, a breach of his close, therein described, by the defendants; the removal of his mill-dam, and the diversion of the water of the river from his mills, caused by the removal, and the taking away of boards, plank, and a chain from the dam. The writ also contains a count for taking away the boards, plank and chain, without the allegation of a breach of the close. The defendants, in a brief statement, justify the acts complained of under the authority of Thomas J. Trask, who it is alleged was the owner of the *locus in quo.*

The plaintiff claims a prescriptive right to maintain the dam across Dyer's river, upon the north shore of which he has mills, and to abut the same upon the south shore, opposite to his mills, and to use all the water raised by the dam. The defendants introduced evidence of title in said Trask, to the close described, and a lease thereof, and other land adjoining from him to them, dated Oct. 16, 1852, for the term of six years, with the right to erect mills upon the same, and to make use of the dam which the plaintiff claims the right

to abut to the south shore of the river, and to use the mills so to be erected till the right under the lease should be determined. A copy of a deed from Thomas Trask, jr., to Thomas J. Trask, was used in defence. It was objected to by the plaintiff on the ground that the defendants justified their acts under the grantor in that deed. By rule 34 of this Court, 1 Greenl. 422, in all actions touching the realty, office copies of deeds may be used in evidence, when the party offering such deeds is not a party thereto, or claims as heir, or justifies as servant of the grantee or his heirs. The defendants having entered the premises described in the writ, and done the acts complained of, at the time they held the lease of the land, cannot be regarded as servants of the grantee within the meaning of the rule, and they do not justify in their brief statement as such, and the copy of the deed was properly admitted.

On March 28, 1814, Jonathan Trask conveyed to the plaintiff twenty-five acres of land, including the gore where the plaintiff's mill stands; and on the 15th day of February, 1823, conveyed to the same one hundred and twenty acres, in one lot, and one hundred acres in another lot, including the gore before conveyed. On August 22, 1826, the plaintiff conveyed to Thomas Trask, jr., all right and title which he had in the one hundred and twenty acre, and the one hundred acre lots, including the gore with covenants of seizin and warranty. On Dec. 29, 1829, Thomas Trask, jr. conveyed to Thomas J. Trask the whole of the one hundred and twenty acre, and the one hundred acre lots, except the gore, but including the *locus in quo;* to wit, the lot on the south side of Dyer's river, upon which the south end of the dam claimed by plaintiff abuts. On April 20, 1841, Thomas Trask, jr., conveyed to the plaintiff the gore, including fulling and grist-mills.

The plaintiff claims no right in the land on the south shore of the river, excepting that acquired by the attachment of his dam thereto. Such right may be enjoyed and not constitute a possession of the land adverse to that of

the owner, which the law presumes, so that the latter is divested of his title after the lapse of twenty years. The abutting of the dam to the south shore would give to the owner of the mills after twenty years, nothing more than an easement. And this confers upon a person who has acquired it, no right to maintain an action of trespass for a breach of the close, against the one having title to the land. *Thompson & als.* v. *Androscoggin Bridge,* 5 Greenl. 62.

But the decision of the case is not put upon the ground that the plaintiff has an easement in the south shore, although that cannot give him a right to maintain an action of this kind for being disturbed in the enjoyment of it. We think it very clear that the plaintiff has no prescriptive right of any kind to the *locus in quo.* The title of the two lots of land called the one hundred and twenty, and the one hundred acre lots, which are on different sides of Dyer's river, and include the gore, which is on the north side of the river, and the place in question, which is on the south side, being in Thomas Trask, jr., under the plaintiff's deed to him, on Aug. 22, 1826, and so continuing till Dec. 29, 1829, the plaintiff could have no right whatever in any of this land by virtue of his former possession; and when Thomas J. Trask took his deed of the *locus in quo,* with other lands on Dec. 29, 1829, he acquired a perfect title thereto; and consequently when Thomas Trask, jr., conveyed to the plaintiff the gore and the mills thereon, it could not include the land on the south side of the river. The plaintiff therefore, on April 20, 1841, when he took his deed of the gore from Thomas Trask, jr., could have had no prescriptive right to the land to which the dam was joined on the south shore, whatever may have been the character of his possession.

The case furnishes no evidence, that Thomas Trask, jr., occupied, in any manner, the south shore after his conveyance to Thomas J. Trask, on Dec. 29, 1829, and the plaintiff could have acquired no possession from him, beyond that of the premises described in the deed which he received in 1841. He must therefore rely for his prescriptive right,

upon his own possession, adverse and exclusive, commencing as early as April 19, 1833, twenty years before the date of the writ. From the year 1826 to the year 1841, he had no title to the gore, the mills, or any other lands referred to in the case. If he occupied the mills, it was in submission to the right of Thomas Trask, jr., from whom he took his deed, at the time last named; and it cannot be assumed without evidence, that thus situated he claimed to hold the dam, which he did not own, abutted to the south shore, adversely to the owner thereof. It is unnecessary to discuss the nature of the possession of the plaintiff, in attaching the dam to the south side of the river, since his deed from Thomas Trask, jr., in 1841, of the gore, including the fulling and the grist mills, because it has not continued a sufficient length of time to give him any rights, even if it had been in all respects adverse. It is proper to remark, that from the evidence of witnesses introduced at the trial, which is uncontrolled, it is quite apparent, that the plaintiff has spoken of the southern shore in a manner entirely inconsistent with any right thereto, in himself, when a party to negotiations to become a purchaser of land on that side of the river. The conclusion is, that an action of trespass, for breaking and entering the close described in the writ, is not maintainable by the plaintiff.

In looking at the origin of the plaintiff's mills, and the dam, and the various conveyances of the same and other lands, disclosed by the case, it cannot be doubted, that up to a recent period at least, and perhaps to the time of the institution of this suit, the dam has been united to the southern shore by the consent of the owner thereof, either express or implied. But there is no evidence introduced and probably none exists, that such consent was given in writing. Consequently, it can be withdrawn at any time, and the owner of the dam might be entitled to take away the materials of which it is composed, without being subject to any thing beyond nominal damages. *Wells & al.* v. *Bannister & al.* 4 Mass. 514. The boards, plank and chain were

so situated as to be personal property. The plank and boards had been a part of the dam; and it does not appear from the evidence, that these were the property of the plaintiff, inasmuch as he had no interest in the mills, land or dam, after his conveyance to Thomas Trask, jr., till the deed from said Trask to him, of the gore and the mills. These premises in the deed would not necessarily comprehend the dam, from which the boards and plank were taken. The chain is shown to be the property of the plaintiff, but there is no evidence, that the defendants used either the boards, plank or chain, any further than they were entitled to do, in making the alterations, which they were authorized to make, by their removal, without appropriating them to their own use. *Plaintiff nonsuit.*