## POLLY vs. McCALL.

[ACTION TO RECOVER DAMAGES FOR OVERFLOW OF LAND.]

1. *Admission of one defendant, in action against two.*—In an action against two defendants, the admissions of one, being competent evidence

against the maker, cannot be excluded from the jury on motion; his co-defendant must limit their operation by a request for proper instructions to the jury.

2. *Proof of written notice.*—In an action to recover damages for overflowing land, proof of a written notice by plaintiff to defendant, requiring an abatement of the ditch and levee by which the overflow was caused, being collateral to the issue, is within the exception to the general rule in regard to the proof of writings; and the contents of such notice may be proved by oral testimony, without producing the writing, or accounting for its non-production.

3. *Prescriptive easement.*—A tolerated or permissive user of an easement can never ripen into a title by prescription, while a user which is adverse, independent, or as of right, if continued for a period corresponding with the statutory bar to a right of entry upon land, will confer an absolute right; but the use of a ditch and levee on a party's own land, which is in itself rightful, cannot confer a prescriptive right to injuriously overflow the lands of an adjacent proprietor many years afterwards, when the ditch has become gradually filled up with the sand and dirt accumulated and deposited therein by the continued flow of water.

4. *Limitation of action.*—Under the provisions of the Code, (§ 2481, subd. 6,) one year is the bar to an action to recover damages for overflowing lands.

5. *Damages and evidence.*—In an action to recover damages for overflowing lands, a recovery cannot be had for injuries accruing after the commencement of the suit; but evidence of such injuries is admissible, with a view of affording information to the jury of the consequences of the diversion under similar circumstances before suit brought.

6. *Burden of proof.*—If a person diverts water from its natural channel, by means of a ditch and levee on his own lands, and thereby injuriously overflows the lands of an adjacent proprietor; and this injury continues, without increase, for ten years,—the jury may infer from these facts, in the absence of all other evidence, that the use was adverse, and of right.

7. *Charge to jury, if correct, must be given as asked.*—Since the statute (Code, § 2355) imperatively requires, that a charge to the jury, if correct and not abstract, must be given in the language in which it is asked, the doctrine of error without injury cannot be applied to the refusal of such charge, although the legal proposition embraced in it was substantially enunciated in another charge given by the court.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Mrs. Mary McCall, against Thomas Polly and James K. Whitman, to recover damages for the overflowing of plaintiff's lands by the defendants' diversion of water from its natural channel. The defend-

ants pleaded "the general issue, and the statute of limitations," in short by consent; and the cause was tried on issue joined on these pleas. The facts of the case, as stated in the bill of exceptions, are these :

"The plaintiff proved her possession and ownership of the lands described in the complaint, and then offered evidence showing that one Abercrombie owned lands adjoining hers on the west and north ; that the defendants' lands, which cornered hers on the north-west, were once owned by one Bethea; that a spring branch, which arose on a different part of plaintiff's plantation, flowed northward through Abercrombie's lands on the west, and then through Bethea's said lands, and, in its natural flow and condition, did not, nor did any of the waters from the same, ever run upon or through any part of the lands of plaintiff described in the complaint ; that said Bethea, in 1841 or 1842, cut a ditch, and threw up a levee on the north side thereof, along the south line of his said land ; that said ditch and levee ran east and west, and terminated near the north-west corner of plaintiff's said lands, commencing at a point west of said branch, and crossing the same nearly at right angles ; that there was a break, or channel, leaving said branch about eighty yards above said ditch, running in a north-eastern direction, and intercepting Bethea's line ; but the evidence was conflicting, as to whether this break was a natural channel, existing before said ditch was made, or whether it commenced after said ditch was made, and was caused by the damming up of the waters of the branch by the ditch and levee. The evidence was also conflicting, as to whether or not Bethea, when he built the ditch and levee, left an opening at the original channel for the water to pass through ; but the evidence showed that he left no such opening for the water passing through the break, and that none of the waters of said branch in their natural flow, either through the break or through the original channel, ever ran upon the plaintiff's said lands ; and that the water which naturally ran upon Bethea's said lands, or at least a large portion of the same, was diverted from his

lands by said ditch and levee, and thrown at the corner of plaintiff's lands above mentioned. The following diagram shows the relative positions of said lands, branch, ditch, break, &c. :

"The evidence further tended to show, that when said ditch and levee were originally constructed, the water thereby diverted from Bethea's land was nearly all thrown upon the lands of Abercrombie, at the point marked A, which was lower than plaintiff's adjoining lands; but that a little water would run upon the corner of plaintiff's lands, near said point, in time of floods, although no perceptible damage was thereby done to plaintiff's said lands until the year 1857; and that the low place at said point on Abercrombie's land had become filled up, about the beginning of the year 1857, by the sand and gravel which had been thrown upon it by said water, until it became higher than plaintiff's adjoining land, and the water then began to flow in large quantities upon plaintiff's land, bringing with it large quantities of sand, which was deposited upon plaintiff's land; and that said land, which was in cultivation when said ditch was dug, and from that continuously up to the beginning of this suit, was thereby damaged and injured. The evidence further showed, that in 1842, and for more than ten years afterwards, the defendant Polly acted as Abercrombie's agent as to his lands at the point in controversy; and the plaintiff proved an admission by said Polly, made in 1844 or 1845, that Be-

thea's diversion of water by said ditch and levee greatly injured both plaintiff and said Abercrombie, and was a great outrage ; that Abercrombie, in 1843, had sued Bethea for the damage done to his land by said ditch and levee, and had recovered $50 damages ; that Bethea then promised to abate the ditch and levee, and to allow the water to flow in its natural channel ; and that he did some work for that purpose in 1845–46, which was ineffectual. The defendants objected to the admission as evidence of Polly's said admissions ; the court overruled the objection, and admitted the evidence ; and the defendants excepted. The plaintiff also proved, by the admissions of said Polly in 1849, that Bethea was then promising to abate said ditch and levee, and thereby to prevent the diversion of said water as aforesaid.

"The evidence further showed, that said Bethea died in 1851 ; that in January, 1857, the devisee under his will sold said lands to the defendants, who immediately went into the possession thereof, and owned and held them ever since. The evidence also tended to show, that, although said Bethea made some ineffectual attempts to turn the water from plaintiff's land, he never did so ; that, although the ditch dug by him nearly filled up by the lapse of time, yet he suffered and permitted said levee to remain ; that the obstruction thereby caused to said waters continued to divert them at the point above mentioned, and the same was suffered and permitted to continue until the defendants became the owners of said lands ; and that they suffered and permitted the same to continue up to this time, although they could have prevented said water from flowing upon plaintiff's said land, by removing the obstructions aforesaid, and permitting the water to flow in its natural channel upon their own land. The plaintiff offered a witness who testified, that in March, 1857, as the agent of the plaintiff, he handed the defendants a written notice from the plaintiff, notifying them that their continuance of the obstruction of the natural flow of said water was injuring her lands, and requiring them to remove or abate the same.

The defendants thereupon objected to the witness testifying in relation to said notice, unless the writing was produced, or its absence accounted for. The defendants had not been previously notified or requested to produce the writing; but they were in court when the objection was made, and the plaintiff's counsel then stated, that he wished them to produce it, if they had it. The court overruled the objection, and the defendants excepted. The witness further testified, that about the same time, as the plaintiff's agent, he had given the defendants a verbal notice to the same effect.

"The plaintiff proved, separately, the damage sustained by her in the use of said land overflowed by said water, and in the injury to her crop growing thereon, during the period of one year before the commencement of the suit, and also the damage done to the land during the same period; and then offered to prove the injury to the land by the overflowing thereof since the commencement of the suit. The defendants objecting to the allowance of this proof, the court thereupon decided, that the plaintiff could not recover for any injury or damage since the commencement of the suit, but that the evidence might be admitted with the view of throwing light upon the question as to the injury or damage within one year before the suit was brought, and for this purpose alone; and then overruled the defendants' objection, and admitted the evidence for this purpose; to which the defendants excepted. The court also stated, at the time of admitting this evidence, that the jury would be instructed on the subject at the proper time; and in charging the jury, the court distinctly told them, that the plaintiff could not recover for any injury or damage done or sustained since the suit was brought, but, if entitled to recover at all, could only recover such damages as had accrued to her within one year before the suit was brought.

"There was no evidence in the case showing, or tending to show, that said Bethea, or any other person, ever claimed or asserted any right to overflow the lands of plaintiff or

said Abercrombie by said ditch and levee, except the evidence above set out. The defendants insisted on the trial, that the plaintiff's right was barred by the adverse enjoyment and user of the ditch and levee by Bethea and those claiming under him. The court charged the jury, among other things, 'that neither Bethea, nor those who held under him, could acquire the right to overflow the plaintiff's lands by prescription, unless they satisfied the jury by the evidence, not only that he or they had overflowed plaintiff's lands for a period of ten years before this suit was brought, but that this was done as of right; and that the burden of showing this affirmatively was upon the party setting up the prescription.' The defendants excepted to this charge, and then requested the court to instruct the jury as follows: (1st.) 'That if the ditch and levee erected by Bethea in 1841–42 flowed water or sand upon plaintiff's lands, and she knew that fact, and that this flow of water and sand commenced at a period, and continued, more than ten years before the commencement of this suit, then the plaintiff is not entitled to recover.' (2d.) 'That if the injury complained of occurred more than one year before the beginning of this suit, then the plaintiff is not entitled to recover.' The court refused each of these charges, and the defendants excepted to the refusal."

The rulings of the court to which exceptions were reserved by the defendants, as above stated, are now assigned as error.

J. F. CLEMENTS, with whom were R. M. WILLIAMSON, and GEO. S. COX, for appellants.—1. This court erred in allowing the plaintiff's witness to speak of the written notice, without producing the paper, or accounting for its absence.—Boykin, McRae & Foster v. Collins, 20 Ala. 230; Wiswall v. Knevals, Hall & Townsend, 18 Ala. 65. The fact that the witness further testified to the service of a verbal notice, did not cure the error in the admission of the evidence; for that would be to allow the witness to decide upon the effect of the written notice.

Polly v. McCall.

2. The admissions of Polly in 1843 were illegal and irrelevant, and ought to have been excluded.

3. The admission of proof as to the damage done after the commencement of the suit, was without legal authority; and the injury done by it was not cured by the charge of the court.—*Langford v. Owsley,* 2 Bibb, 215; *Shaw v. Etheridge,* 3 Jones' Law, 300; *Duncan v. Markley,* Harper, 276.

4. The charge given by the court instructed the jury, in effect, that the defendant was bound, in order to make out his prescriptive right, to adduce other evidence than the *user* itself; thereby violating the recognized principle, that the jury may presume the *user* to have been of right from the mere fact that it was enjoyed for a period of ten years.— *Esling v. Williams,* 10 Barr, 126; *Stein v. Burden,* 24 Ala. 130, and authorities there cited. As to a prescriptive right to divert water from its natural channel, see *Middleton v. Gregorie,* 2 Rich. 631; *Tyler v. Wilkinson,* 4 Mason, 397; *Smith v. Smith,* 3 Halsted, 140; *Trash v. Ford,* 39 Maine, 439; *Bullen v. Runnels,* 2 N. H. 255.

5. The first charge asked and refused, asserted a correct legal proposition, and was necessary to the protection of the defendants' rights before the jury. The fact that the plaintiff knew of the diversion and overflow, warranted the presumption that she acquiesced in it; and her long acquiescence authorized the inference of a grant or right.— *Campbell v. Wilson,* 3 East, 294; *Tyler v. Wilkinson,* 4 Mason, 402; Angell on Water-Courses, §§ 200–218.

BAINE & NESMITH, *contra.*—1. As to the admissibility of parol proof of the written notice given by plaintiff to defendants, see 2 Phil. Ev. 225; 4 *ib.* 433, and cases there cited.

2. As to the admissibility of evidence of damage accruing after the commencement of the suit, for the single purpose for which it was admitted by the court, see *Stein v. Burden,* 24 Ala. 130.

3. The affirmative charge of the court enunciated two

legal propositions, each of which is firmly established by a long chain of adjudications : 1st, that, in order to give a title to an easement by prescription, the enjoyment must be as of right; and, 2d, that the burden of proving this rests on the party who sets up the prescription.—1 Greenl. Ev. § 539 ; Angell on Water-Courses, §§ 216–221 ; *Brown v. King*, 5 Metcalf, 181 ; *Sargent v. Bullard*, 9 Pick. 251 ; *Mebane v. Patrick*, 1 Jones' Law, 25 ; *Ingraham v. Hough*, *ib.* 39 ; *Felton v. Simpson*, 11 Iredell, 85 ; Angell on Limitations, § 390. The charge does not, either expressly or by implication, withdraw from the jury the right to consider all the evidence in determining whether the enjoyment was of right ; and if the defendants feared that it might mislead the jury, they should have asked for an explanatory charge. *Ewing v. Sanford*, 19 Ala. 605; 28 Ala. 200.

4. The first charge asked, if given, would have authorized a verdict for the defendants, although the jury might have believed from the evidence that Bethea always admitted the wrong, and promised every year to remove it.

5. The second charge asked confounds the injury with the damages. The injury of which the plaintiff complained was the diversion of the water, while she claimed the damages resulting from that injury. The fact that the injury—*i. e.*, the tort, or wrongful act, by which the damage was subsequently caused—occurred more than a year before the suit was brought, would not, as the charge asserts, bar a recovery for the damages which accrued from that tort within the twelve months. But, if injury and damages are to be considered as synonymous terms, then the refusal of the charge amounts only to error without injury ; since the court expressly instructed the jury, that the plaintiff's recovery must be limited to the damages which accrued within twelve months before the commencement of the action.

STONE, J.—The circuit court did not err, in admitting evidence of the admissions of the defendant Polly. The facts which the admissions tended to prove were material,

and, as against the defendant Polly, we can perceive no reason for excluding them from the jury.—*Palmer v. Severance*, 9 Ala. 751 ; *Falkner v. Leith*, 15 Ala. 9 ; *Goodman v. Walker*, 30 Ala. 500.

[2.] Neither did the court err, in admitting oral testimony of the written notice served in this case. This fact was collateral to the issue—was not necessary to the plaintiff's success in the suit, either in consequence of any requirement of the law, or of the pleadings in the cause. This case, then, is within the exception to the general rule in regard to the proof of writings.—*Dumas v. Hunter*, 30 Ala. 75 ; 1 Greenl. Ev. § 561; 2 Phil. Ev. (ed. 1849,) 225 ; 4 *ib.* 433.

[3.] In cases where there is no secrecy in the transaction, holding adversely, independently, and as of right, are not very distinguishable from each other. The real point of distinction is between a tolerated, or permissive *user*, and one which is adverse, or as of right. The former does not mature into a title by prescription ; while the latter, if continued by actual adverse enjoyment for a period corresponding with that which is prescribed in the statute of limitations in reference to the right of entry upon land, will confer an absolute right.

There is another point presented by the evidence in this record, which we feel it our duty to notice. The record informs us that, although the ditch and levee, from the time they were placed there, diverted the water from its accustomed channel ; and although some portions of water, in times of great floods, flowed on the lands of Mrs. McCall, yet no damage was actually done to the lands in controversy, until the year 1857. There is a wide difference, between the *act* of sinking the ditch, and the ultimate *result*, viz., the flooding of Mrs. McCall's land. The one was, in itself, rightful, because it was on the lands of him under whom defendants derive their title. The use of the ditch and levee, *per se*, needed no prescriptive right to uphold it. The consequential result—the injurious flooding of the lands of plaintiff—did not confer a right of action, until

the injury actually occurred.. Till then, the *user* in its injurious sense did not begin. A partial, harmless flood--ing, although exercised of right, could not, by prescription, ripen into a right to flood Mrs. McCall's lands more exten-sively and injuriously. The wrong, for which damages are recoverable, is the actual injury to the plaintiff's land, not the remote cause from which that injury resulted many years afterwards.

[4.] In the case of *Roundtree v. Brantley*, (34 Ala. 544,) most of these questions are considered and settled. It is also there ruled, that the statute of limitations in this action is one year.—See, also, Angell on Water-Courses, §§ 216 to 221, inclusive; Ang. on Lim. § 390; *Mebane v. Patrick*, 1 Jones' Law, 23; *Ingraham v. Hough*, ib. 39; *Esling v. Williams*, 10 Barr, 126; *Brown v. Cockrell*, 33 Ala. 38; *Felton v. Simpson*, 11 Ired. Law, 84; *Campbell v. Smith*, 3 Halst. 140; *Sargent v. Bullard*, 9 Pick. 251; *Brown v. King*, 5 Metcalf, 173; *Tyler v. Wilkinson*, 4 Ma-son, 397; *Bullen v. Runnels*, 2 N. H. 255; *Middleton v. Greogrie*, 2 Rich. Law. 631; *Trask v. Ford*, 39 Me. 437; *Campbell v. Wilson*, 3 East, 294.

[5.] The circuit court was right, in telling the jury that they could not allow damages for injuries which accrued after the commencement of the suit.—See *Shaw v. Ethe-ridge*, 8 Jones, 300; Harper, 276; *Langford v. Owsley*, 2 Bibb, 215. But the court did not err, in admitting evi-dence of injury after the commencement of the suit, with the view of affording information to the injury of the con-sequences of the diversion under similar circumstances before the suit—*Stein v. Burden*, 24 Ala. 147.

[7.] One portion of the affirmative charge given and excepted to, was, at least, calculated to mislead, if given without explanation. We allude to that part which asserts that, to establish a right by prescription, the burden was on the defendant of showing affirmatively that the act of flooding the plaintiff's land was done as of right. There was, it is true, evidence which tended to repel the idea that the flooding of plaintiff's land was done *as of right*.

Polly v. McCall.

But it was for the jury to determine what facts were proved. We hold, that where one land-holder, by a ditch and levee on his own lands, diverts water, and throws it on the lands of another to his injury; and this injury continues, without increase, for ten years; and there is no evidence on the question whether such *user* is permissive or otherwise,— the jury may, without further proof, infer that the use was adverse, and *as of right.* This question, however, must depend much on the nature of the use, whether exclusive, &c. Many cases may be supposed—such as the use, with others, of a private way, or of a fishery—in which, doubtless, some proof would be required that the use was adverse, or as of right.—See *Brown v. Cockrell, supra.* Subject to this criticism, the affirmative charge was free from error.

The first charge asked was rightly refused. If given, the defendants would have been entitled to a verdict, notwithstanding the jury may have been convinced by the evidence that the author of the nuisance had given repeated and continuous assurances that the nuisance should be abated; and notwithstanding the injury may have been, for several years, slight and inconsiderable, and then have become grievous and oppressive.

The second charge asked should have been given. The injury complained of was the *damage* to plaintiff's land, not the *cause* which produced that injury. Injury, in legal contemplation, is an effect—not a cause.

[7.] It is contended for appellee, that, if in refusing this charge the circuit court erred, it was error without injury; for the same legal principle which this charge asserts, was expressly affirmed by the court in another part of the charge to the jury. This seems to have been the case; and we regret, under the circumstances, that we feel it our duty to send this case back for another trial. The statute, however, is positive. Its language is—" § 2355. Charges moved for by either party, must be in writing, and must be given or refused, in the terms in which they are written; and it is the duty of the judge to write 'given'

or 'refused,' as the case may be, on the document, and sign his name thereto; which thereby becomes a part of the record, and may be taken by the jury with them on their retirement." This section secures to parties certain rights, and also operates a protection to the court and the parties against errors of memory. Among the rights secured to the party who requests the charge, are— 1st, that he can have the charge given in his own language, if the charge express a correct legal principle, and be not abstract; 2d, that he can claim that charges thus moved for, shall be carried by the jurors with them in their retirement. We should deprive parties of these rights, if we held the doctrine of error without injury applicable to such a case as this. We have no authority to sanction a practice, which would, in effect, abrogate the statute in many cases.

Reversed and remanded.