# Central of Georgia Railway Company v. Windham.

*Action against Railroad Company to recover Damages resulting from Overflow caused by Construction of its Roadway.*

1. *Liability of railroad company for overflow resulting from construction of its road-bed.*—Where a railroad company, in the construction of its road-bed and other improvements upon its property, makes excavations, ditches and culverts whereby the surface rain water is diverted from its natural course and made to overflow upon the lands of another, to his injury, such railroad company is liable in damages for the injuries resulting.

2. *Same; when exemplary damages may be recovered; admissibility of evidence.*—In an action against a railroad company to recover damages resulting from the overflow of surface rain water upon the plaintiff's lands, caused by the making of excavations, ditches and culverts by the defendant in constructing its road-bed and making other improvements, in addition to actual damages, the plaintiff can recover punitive damages if the injury complained of was vexatiously or wantonly done; and in such an action, as tending to show a ground for the recovery of punitive damages, it is competent to show knowledge on the part of one of the defendant's employes who was the foreman of the section adjoining the plaintiff's property, that the plaintiff resided on the overflowed lands.

3. *Same; same; damages and evidence.*—In an action to recover damages to the lands of the plaintiff caused by the acts of the defendant which resulted in the plaintiff's lands being overflowed, a recovery can not be had for injuries occurring after the institution of the suit; but evidence of such injuries is admissible, with a view of affording information to the jury of the consequences of the overflow under similar circumstances, before the suit was brought.

4. *Same; same; admissibility in evidence.*—In an action against a railroad company, to recover damages alleged to have been caused by the making of excavations, ditches and culverts in the construction of the defendant's road, which resulted

VOL. 126.

[Central of Georgia Railway Company v. Windham.]

in the lands of the plaintiff being overflowed with surface rain water, where one of the injuries complained of in the complaint was, that the water standing under the house of the plaintiff tended to rot the timbers of the house, the testimony of a carpenter who had had experience in the construction of buildings, that the tendency of water standing under a house was to rot the timbers thereof, is admissible in evidence.

5. *Same; same; same.*—In such an action, the foundation of the suit being the construction of excavations, ditches and culverts, whereby the surface rain water was diverted from its usual course and made to flow upon the plaintiff's lands, the degree of care used by the defendant in constructing the water-ways is immaterial in determining the right of the plaintiff to recover actual damages sustained; and evidence tending to show that the excavations and culverts were constructed in a workmanlike manner and were kept in proper condition, is inadmissible.

6. *Same; same; same.*—In such a case, the injuries complained of being the direct consequences of the defendant's act, it is immaterial whether or not the excavations, ditches and culverts constructed by the defendant along its track, were sufficient to carry off all rain water which would naturally and usually flow upon the defendant's premises; and, therefore, evidence having a tendency to show such sufficiency is inadmissible.

APPEAL from the Circuit Court of Dale.

Tried before the Hon. A. A. EVANS.

This was an action brought by the appellee, W. P. Windham, against the Central of Georgia Railway Company. The complaint contained several counts, in which it was alleged that by reason of the construction by the defendant of its roadway and depot in the town of Ozark, Alabama, and the digging of ditches and culverts and excavations necessary thereto, the surface or rain water is made to flow over the premises of the plaintiff causing injuries thereto; that at the time of such overflow the plaintiff had a dwelling house located on his lands, which lay close to the road of the defendant, and that he was cultivating a crop of vegetables and other crops upon said premises; that by reason of the construction of the road bed and its depot, by the defendants, the waters that were thrown back upon the premises of the plaintiff washed his lands, materially

affecting their fertility, and in other places caused a deposit of sand upon said lands, destroying his crop of vegetables, and that the water standing under his house had made the timbers underneath his house begin to rot; and that by reason of the overflow of said lands, which was caused by the construction of the road by the defendant, the health of his family had been made bad, and that on account of sickness resulting therefrom, he had lost the benefit of the services of his children, and had been required to pay out large amounts for medical attention and nursing of his children. The defendant pleaded the general issue.

On the trial of the cause, the plaintiff introduced evidence tending to show that prior to 1868, and up to and during the year 1897, he owned a tract of land in the city of Ozark, Alabama, and that he and his family had continuously resided on said lot for thirty years, just preceding 1898; that on said lot he had a dwelling house containing seven rooms, in which he and his family resided during that time; and that he had thereon a smoke house, a barn and necessary fencing; and he had a garden and orchard. That up to the year 1888, there was a low place and some gullies just south of this lot and dwelling house, in which the rain water that came from the southeast and northeast of his dwelling emptied, and that his yard and garden and orchard never overflowed from surface water prior to 1888; that prior to 1888, the health of his family was good; that in the year 1888, the defendant constructed a railroad into the city of Ozark along one of the public streets of said city, and built a depot, and depot yard in said city; that said depot yard and the tracks of said railroad were built in the place where the gullies were situated just south of the plaintiff's residence, and that in building said depot and depot yard, and in the construction of its track, the defendant filled up said low place where the surface or rain water had been accustomed to flow; that as the result of such low place being filled up, the rain water was caused to flow on said premises, which it had never been accustomed to do theretofore; that said railroad in building its track had also made excavations and dug ditches and culverts to the north and east of said plain-

tiff's premises, and that on account of said excavations,
ditches and culverts the rain water was caused to pour
upon and overflow plaintiff's premises; that before the
excavations, ditches and culverts were made, the water
flowed in an opposite direction.   That by reason of the
facts as stated above, plaintiff's premises were over-
flowed on three occasions as mentioned in its complaint
in the year 1897, towit, in the months of February or
March, and in April and July.   That during said over-
flows, the water came upon and overflowed plaintiff's
yard and ran under his dwelling house and over his or-
chard and garden; that said overflow washed away the
top soil from the orchard and garden and damaged his
vegetables and the other crops growing on said lands.
That said water so overflowed upon his premises stood
under his dwelling for two or three weeks, and that by
reason of the dampness caused thereby, his family be-
came sick and it was necessary for the plaintiff to spend
large sums for the purchase of medicine and in the pay-
ment of doctor's bills.   That said overflow was causing
his lands to depreciate   in   value, materially affecting
their fertility, and caused him to use the labor of his
children while they were sick and unable to work.

The defendant's evidence tended to show that in build-
ing its track and depot and depot yards in the city of
Ozark, it acted by and under the corporate authorities
of said city; that its depot, tracks, excavations, ditches
and culverts were constructed in a first class way, and
in the manner usual on all first class railroads; that the
sewers and culverts in its depot grounds, yards and
under its track, were sufficient in ordinary rains to car-
ry off and had carried off all the water from rains which
usually fall; that in the latter part of February or the
first of March and in April and July, 1897, the time
mentioned in the plaintiff's complaint and referred to
in his testimony; there were very excessive and unusual
rains in and near the city of Ozark; that said rains
overflowed the ditches and culverts in said city, and
overflowed the sidewalks of said city; that on account of
said excessive and unusual rains, the rain water broke
over and overflowed the ditches and culverts on the
streets south and east of the defendant's tracks, and de-
pot grounds, and then overflowed the defendant's ditch-

es, culverts and embankments along its track, and then reached the plaintiff's lands. That plaintiff's residence and lands were lower than the lands just east of it, lower than the defendant's tracks and embankments, and that said water from the streets and culverts and ditches in the city of Ozark greatly increased the flow of water on defendant's premises and caused the overflow of plaintiff's premises; that the culverts and ditches provided by the defendant along its track and depot grounds had never overflowed before said excessive and unusual rains, but had always been sufficient to carry off the rain water that came upon the defendant's property; that plaintiff took no steps and had nothing done to prevent the said rain water from coming into his yard and under his house, and did nothing to get it off his premises and from under his house; but allowed the water to flow thereon and to remain standing.

The plaintiff, while being examined as a witness in his own behalf was asked the following question: "Did any of the agents of the defendant know that you and your family lived on said lands prior to said overflow?" The defendant objected to this question, upon the ground that it called for illegal, irrelevant and immaterial evidence. The court overruled the objection and the defendant duly excepted. Upon the plaintiff answering that a section foreman of the defendant, whose duty it was to look after the railroad track on the section near the plaintiff's house knew the plaintiff and his family lived on said lands before the overflow, the defendant moved to exclude said answer, upon the ground that it was irrelevant, illegal and immaterial to any issue in the case. The court overruled this motion, and the defendant duly excepted.

Upon the plaintiff testifying to the different members of his family being sick just after the overflows, and that he lost the services of his children during their illness, and had to pay for medicine and medical attention, the defendant objected to each of the questions eliciting such testimony, and also moved to exclude the answers, upon the grounds that such evidence was illegal, irrelevant and immaterial. The court separately overruled the several objections and motions to exclude, and to each of such rulings the defendant duly excepted.

[Central of Georgia Railway Company v. Windham.]

The plaintiff was then asked the following question: "How long after said overflows did your children, or any of them remain sick?" The defendant objected to this question, because it called for illegal, irrelevant and immaterial evidence, and duly excepted to the court's overruling its objection.

Upon the plaintiff testifying in response to said question that some of his children had never been well after said overflows up to the time of said trial, the defendant moved to exclude such answer, upon the same grounds. The court overruled the motion, and the defendant duly excepted.

The plaintiff also testified as a witness in his own behalf that said overflows in February or March and April and July, 1897, had a tendency to cause the timbers in and under his house to decay and rot, but that he could not state that any particular pieces of timber in or under his house had been decayed by such overflow. The defendant objected to this evidence, and moved to exclude it on the ground that it was illegal, irrelevant and immaterial. The court overruled the objection, and the defendant duly excepted.

The plaintiff introduced one Frissell, who testified that he was a carpenter and builder and had been in that business for a number of years and had built and worked on many houses. Said witness was then asked by the plaintiff the following question: "What effect would water have on the timbers of a house if allowed to flow under and stand under the house for two or three weeks at a time?" The defendant objected to the question, on the ground that it called for illegal, irrelevant and immaterial evidence. The court overruled the objection and the defendant duly excepted. The witness answered: "If water was allowed to flow under and stand under a house for two or three weeks at a time, it will have a tendency to decay the timbers of the house." The defendant moved to exclude this testimony on the ground that it was immaterial, irrelevant and illegal, and duly excepted to the court's overruling his motion.

The defendant introduced one Dun as a witness, who testified that he had carefully examined and surveyed defendant's tracks, depot grounds, ditches, excavations

and culverts and the lands adjacent thereto in the city of Ozark; and that he was a civil engineer of 9 years' experience. Thereupon the defendant asked said witness the following question: "State whether or not the ditches, drains and culverts along defendant's track and under its depot grounds in the city of Ozark are sufficient to carry off all rain water which would naturally and usually flow upon defendant's lands and premises in said city of Ozark?" The plaintiff objected to this question, on the ground that it called for illegal testimony, and because it called for the opinion of the witness. The court sustained the objection, refused to allow the witness to answer such question, and to this ruling the defendant duly excepted.

Upon the introduction of all the evidence the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that the defendant had the right under the law to fill in and raise the lands upon which its depot and roadbed and tracks in the city of Ozark, Ala. are located." (2.) "The court charges the jury that the defendant had the right to protect its depot grounds and roadbed from rain water which flowed upon them from the streets of the city of Ozark, provided it acted with reasonable care and diligence; and if in so doing said rain water then flowed upon plaintiff's lands, and the damages complained of resulted therefrom, then your verdict must be for the defendant, the railway company." (3) "If the jury are reasonably satisfied from the evidence that the plaintiff, by the exercise of ordinary care and diligence could have prevented and avoided the damages for which he now sues in this case, then your verdict must be for the defendant, the railway company." (4.) "If the plaintiff in this case, by the exercise of ordinary care and diligence, could have prevented any damages to his property by the said overflow of water complained of, then your verdict must be for the defendant, the railroad company." (5.) "The court charges the jury that the defendant had the right to fill in or raise the lands upon which its depot and tracks adjacent thereto are located, and had the right

to protect its said lands from the surface or rain water which flowed upon its said lands from the streets in the city of Ozark; and if in doing so the defendant exercised reasonable care and diligence, then the plaintiff can not recover in this case for any damages which may have resulted to his lands from the overflow of his lands by such surface or rain water so coming from said streets." (6.) "If the jury are reasonably satisfied from the evidence in this case that the damages as alleged in the complaint were caused by rain water, flowing from the streets of the city of Ozark, across defendant's lands and then over plaintiff's land, then your verdict must be for the defendant, the railway company."

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

G. L. COMER, for appellant.—The court erred in refusing to give each of the written charges asked by appellant.—Sedgwick on Damages, (6th ed.) 160, * p 143; 3 Sutherland on Damages, pp. 420-21, 422; Cooley on Torts, (2d ed.), 681, et seq.; Cromelin v. Coxe & Co., 30 Ala. 318; 48 Amer. Dec. 616, note; Peoria v. Adams, 72 Ill. App, 668; 39 St. Rep. 344; Gannon v. Hargadan, 87 Amer. Dec. 625; Chase v. R. R. Co., 24 Bard. 273; Polly v. McCall, 37 Ala. 20; Hughes v. Anderson, 68 Ala. 283; 1 Sherman & Redfield on Negligence, (5th ed.), §§ 86, 87, 96.

SOLLIE & KIRKLAND, contra.

SHARPE, J.—The decision of this case does not call for the discussion of rights respecting the natural flow of water from dominant over servient lands. The gravamen of the complaint lies in averments which are supported by evidence to effect that the defendant, in constructing its road-bed and depot grounds, made excavations, ditches and culverts whereby surface rain water which otherwise would have run in a different direction, was conveyed to and allowed to overflow plaintiff's lands to his damage, etc. Upon the plainest principles, such subjection of the plaintiff's lands to an unnatural and harmful servitude was a tort for

which the defendant was answerable.—*Savannah etc. R. Co. v. Buford*, 106 Ala. 303; *Crabtree v. Baker*, 75 Ala. 91; *Nininger v. Norwood*, 72 Ala. 277; *Hughes v. Anderson*, 68 Ala. 289; *Polly v. McCall*, 37 Ala. 20; *Rychlicki v. St. Louis*, 98 Mo. 497, 4 L. R. A. 594; *Paddock v. Somes*, 10 L. R. A. (Mo.) 254; *Benson v. Chicago & A. R. R. Co.*, 78 Mo. 504; *Rathke v. Gardner*, 134 Mass. 14.

In addition to actual damages recoverable in such a case punitive damages may be assessed if the wrong was vexatiously or wantonly done.—*Hughes v. Anderson, supra.* As a step towards proving a case for punitive damages it was competent to show knowledge on the part of defendant's section foreman that plaintiff resided on the overflowed land.

Actual damages were allowable only for injuries sustained before the commencement of the suit, but it was not error to allow evidence of continuing consequences by way of informing the jury of the original extent and character of the overflow.—*Polly v. McCall, supra.* Damages of which evidence was admitted were alleged in the complaint, and being within the issues the plaintiff was at liberty to prove them.—*Reynolds v. Chynoweth*, 68 Vt. 104; *Onion v. Fullerton*, 17 Vt. 359; *Wheelock v. Wheelock*, 5 Vt. 433. If too remote or inconsequential, action of the court should have been invoked to strike averments of them from the complaint or to instruct the jury against their allowance.

Proof of the tendency of water to rot the house was not improper whatever might be said of its sufficiency.

The foundation of the suit being the active creation of a nuisance, and not merely a wrong arising from negligence, the degree of care used by the defendant in constructing water-ways is immaterial in determining the right to recover actual damages.

The defendant was liable for the direct consequences of its act whether resulting in the usual or unusual course of events, and, therefore, the evidence sought to be elicited from the witness Dun, besides being merely cumulative, was immaterial unless to rebut evidence of malicious or wanton injury. The only evidence introduced directed to malice or wantonness was that tend-

[Jordan *et al.* v. Phillips & Crew Co. *et al.*]

ing to show the section foreman knew of plaintiff's residence on the land. This in itself was insufficient to authorize a finding for punitive damages, and it not appearing that that question was submitted to or passed on by the jury, it will not be presumed that the defendant was injured because the objection to the question addressed to Dun was sustained.

No evidence was offered to show a way in which the plaintiff could have avoided the damages for which he sues, and charge 3 was, therefore, abstract. Under the principles we have stated the other charges were likewise properly refused.

Let the judgment be affirmed.