[Tutwiler coal, Coke and Iron Co. v. Nichols.]

# Tutwiler Coal, Coke and Iron Co. v. Nichols.

## *Damages for Pollution of Stream.*

(Decided Dec. 21, 1905.    39 So. Rep. 762.).

1. *Limitation of Actions; Water-courses; Pollution.*—An action by a lower riparian proprietor for damages for pollution of stream is within Sec. 2801, Subdiv. 6, Code of 1896, and such riparian proprietor is not entitled to damage that accrued prior to the time of filing of suit for a longer period than one year.

2. *Waters and Water-courses; Pollution; Damages; Evidence.*—It is competent to show the condition of the stream prior to the period of one year before the bringing of the action, and subsequent thereto, to show the effect of the pollution, if any, on plaintiff's land and in the stream, so as to give some idea of the damage.

3. *Same; Crops.*—As bearing on the question of the value of the land alleged to have been injured by the pollution of the stream, it is competent to show the kind and value of the crops raised by plaintiff on the land, to illustrate the character and value of the land, and the crops it was adapted to.

4. *Same; Health of Plaintiff's Family; Odors.*—It was competent to show that the pollution alleged had effected the health of plaintiff's family, and that it had caused odors in the stream, or to arise therefrom.

5. *Same; Fish.*—Although plaintiff had no title to the fish in the stream until caught, it was competent for him to show that since the pollution alleged his catch of fish had not been as great as before, that the number of fish in the stream had decreased, and that dead fish had been discovered often in the stream.

6. *Trial; Evidence; Motion to Strike.*—Where no objection was taken to the question, and no motion made to exclude the answer, it is within the discretion of the court to strike it later on motion, and not reviewable.

7. *Same; Abstract Instructions.*—In the absence of evidence that the fish traps of plaintiff were constructed in violation of law, a charge so asserting is abstract and properly refused.

[Tutwiler coal, Coke and Iron Co. v. Nichols.]

8.  *Limitation of Actions; Pollution of Stream; Instructions.*—It
    was error to refuse to charge that the plaintiff was not en-
    titled to recover any damages done by the pollution of the
    stream prior to one year before the bringing of the action.

9.  *Waters and Water-course; Pollution; Action; Instructions.*—A
    charge asserting that if plaintiff's land had been as greatly
    injured by deposits of refuse and deleterious matter, and
    the waters of the river had been rendered as impure, more
    than a year prior to the time of the bringing of the suit, as
    they were at the time the suit was brought, then plaintiff would
    not be entitled to recover, was erroneous and properly re-
    fused.

10. *Same; Permanent Injuries.*—There being no evidence of loss
    of crops by deposits or overflow, but the evidence tended to
    show that the lands had been rendered less productive by
    reason of the deposits, and that the land had been permanently
    injured thereby, it was error to refuse to charge that the plain-
    tiff could not recover for the loss of crops, but only for the
    damages for the permanent injury.

APPEAL from Birmingham City Court.

Heard before HON. C. W. FERGUSON.

The character of this action is stated in the complaint
which is as follows: Count 1. Plaintiff claims of the
defendant, a private corporation, the sum of $10,000 dam-
ages in this, that he is the owner of the following tract
of land situated in Jefferson county, state of Alabama,
to-wit, (Here follows a description of the land) through
which or by the side of which flows the channel of Little
Warrior river, the said river at said place having a well
defined channel. That naturally said river furnishes a
large supply of constantly flowing, pure and wholesome
water. That his land aforesaid was naturally fertile,
and could be devoted profitably to agriculture and horti-
culture. That much of said land was overflowed by the
waters of said river. Plaintiff has placed or caused to
be placed in the channel of said river or the tributaries
thereof above said land large quantities of refuse, waste
and poisonous matter from its mines or other industries,
which said refuse, waste and poisonous matter has been
carried by the waters of said river or the tributaries
thereof, down to and deposited upon plaintiff's land

which is overflowed by said stream, greatly damaging and injuring the same, wherefore he sues. The second count was the same as the first down to and including the words "A large and constantly flowing pure and whole-some water," and adds the following. "And plaintiff avers that said water was suitable to be used for domestic purposes, that defendant has placed or caused to be placed in said river or the tributaries thereof above said lands, refuse or deleterious substances from its mines or other industries and has thereby polluted the waters of said stream so that they have become useless to plaintiff for domestic purposes when flowing by or through his lands aforesaid, and has rendered the same impure and unwholesome, and has so poisoned and polluted the same that they give off foul and unpleasant odors when passing by or through said land, and has rendered his premises unhealthful; that its waters have become poisonous and destructive to his domestic animals, and by its said acts, has rendered his land less valuable, etc., wherefore he sues. Count 3 is same as 1 down to and including the words "constantly flowing pure and wholesome water" and adds the following: plaintiff avers that a large part of his said land has been and is arable and under cultivation, and that before the grievances hereinbefore complained of, the same was productive upon which he grew large and valuable agricultural and horticultural crops. That he had on said lands a comfortable home and out houses, and had made and had other farm improvements; that he had in said stream on said premises large and valuable fishery or fish trap from which he caught large quantities of valuable fish ;that at other places on said land, there were many varieties of fish, which afforded pleasure and profit in catching them. And plaintiff avers that defendant has placed or caused to be placed in the channel of said river or the tributaries thereof, above said lands, large quantities of waste, refuse and poisonous matter from its mines or other industries, which said refuse waste and poisonous matter has been carried by the waters of said river or the tributaries thereof down to and deposited by said land which is over-

flowed by said stream, greatly damaging and injuring the
same; and that said land has been rendered less produc-
tive by reason thereof, that it has been rendered more
difficult to cultivate, that it has been rendered less val-
uable by giving off foul odors arising from said deposits,
and because the health of his family and ten-
ants had been injured thereby; that his prem-
ises has been rendered less healthful; that de-
fendant has caused poisonous, deleterious and of-
fensive matter and substances to be deposited in
said stream or the tributaries thereof and thereby car-
ried down to, upon and through his said land, thereby
polluting and poisoning the water of said stream where
it passes by over or through said lands, thereby causing
the fish to leave the same, or rendering them less num-
erous in said stream, greatly injuring and destroying the
value of said fishery and thereby rendering the health
of his premises bad, making it exceedingly disagreeable
to be on or near said stream on said land; and that by
filling up the bed of said stream the said fish trap has
been greatly injured and rendered less valuable; and that
there was in said stream on said land valuable water
power which has been rendered less valuable or account
of the filling up of the channel of said stream, wherefore
he sues and claims damages. Demurrers were filed to all
the counts. 1st. Because the description of the land is
vague and uncertain; 2nd, because it is not alleged that
plaintiff was making any use of the land alleged to have
been injured by the defendant's acts; because it
is not alleged that defendant's acts in any way
interferred with any use to which said land was
being put by plaintiff. 4th. Because it is not
alleged that the quantity of matter from de-
fendant's mines and industries placed in said stream
by defendant was not more than the defendant might
lawfully deposit. 5th. Because it is not alleged that
plaintiff was making any use of sthe water described in
the complaint prior to their alleged pollution by the de-
fendant. The following additional grounds were filed to
count 3. Because it is not alleged that plaintiff was

making any use of the alleged water power on said land, which has been interfered with by defendant's acts. 7th. Because it does not appear that the filling of the channel of said stream was proximately caused by defendant's act and because it does not appear that the injury complained of was proximately caused by defendant's alleged acts. The pleas were the general issue and the statute of limitation one year. The evidence tended to show that the Little Warrior river ran through the lands described in the complaint; that the plaintiff lived on it, and about thirty or thirty-five acres of it overflowed; that the water of the river used to be pure and uncontaminated, clear, and in large quantities; that it is now contaminated; it appears that this land is situated on Little Warrior river about five to seven miles down the river from the mouth of Five Mile creek, and about two miles below the mouth of Village creek, that the defendant owned and operated a coal mine and ore washer on Five Mile creek or Village creek, and that other corporations four or five in number, have washers on Five Mile creek and also on Village creek; that the waters of the creek are discolored and that the discoloration extends down the river. It is shown that the plaintiff formerly caught large quantities of fish in his trap down the river, but that since the putting in of the washers, the catch had been considerably lessened. The evidence also tended to show that on part of the lands that overflow, there were deposits of coal dust and sticky stuff, a kind of white mud that took a year or two to dissolve, and that where these deposits were, crops could not be grown. It was also shown that there were noxious odors about the water and that the health of the family had been impaired. The other facts sufficiently appear in the opinion.

The following charges were refused to defendant: "(1) I charge you, gentlemen of the jury, that if you believe, from the evidence, that the plaintiff's fish trap is not so constructed as to permit fish to pass through or around same, you can find no damages to plaintiff on account of injury to his fishery. (2) I charge you, gentlemen of the jury, that in this case there can be no recov-

[Tutwiler Coal, Coke and Iron Co. v. Nichols.]

ery by the plaintiff in this case for any damages done to him or his lands by defendant for more than one year prior to the bringing of this suit. . (3) I charge you, gentlemen of the jury, that if you believe, from the evidence, that prior to August, 1901, the plaintiff's lands had been as greatly injured by deposits of refuse and deleterious matter, and the waters of the river had been rendered as impure as they were at the time this suit was brought, plaintiff cannot recover. (4) I charge you, gentlemen of the jury, that if you believe, from the evidence, that the injury to plaintiff's land is permanent, there can be no recovery by plaintiff, so far as his lands are concerned, for the loss of his crops, but only for the permanent injury to his lands."

There was verdict and judgment for plaintiff in the sum of $250.00 and defendant appeals.

BENNERS & BENNERS, for appellant.—The statute of limitations in an action for damages by a lower against an upper riparian owner is one year. No damages suffered prior to one year before the suit is brought, and none suffered after the suit is brought, can be recovered. —*Hughes v. Anderson*, 68 Ala. 280; *Drake v. Lady Ensley, etc. Co.*, 102 Ala. 501; *Polly v. McCall*, 37 Ala. 20; *Rountree v. Brantley*, 34 Ala. 544. The evidence of the ownership by plaintiff of lands not riparian was irrelevant in this case.—*Franklin v. Pollard Mill Co.*, 88 Ala. 318. If the plaintiff's fish trap was constructed in violation of law, he could not recover damages for the interruption of this means of taking fish.—§ 5587, code 1896; *Kane v. Johnson*, 9 Bosw. 154; *Kaufman v. Babcock*, 2 S. W. 878. If the injury to plaintiff's land was permanent, damages for this permanent injury would not include compensation for the crop which he would have made, but for the injury. He cannot recover both for the permanent injury and for the cost of the crop he would have made but for the permanent injury.—*H. A. & B. R. R. Co. v. Matthews*, 99 Ala. 30; *Drake v. Lady Ensley, etc., supra; Hartshorn v. Craddock*, 17 L. R. A. 426 and note.

23

FRANK S. WHITE & SONS, for appellee.—The statute of limitations for one year is not a bar to the action. In any event, charge 2 requested by the defendant was properly refused. It ignores the provision of section 11 of the code of 1896. The charge is also involved and calculated to confuse and mislead.

DENSON, J.—Action on the case by R. B. Nichols, plaintiff, against the Tutwiler Coal, Coke & Iron Company, defendant, to recover damages for the pollution of a stream of water and alleged injuries to realty. Plaintiff owned a tract of land in Jefferson county through which, or by the side of which, flowed the Little Warrior river. Five Mile creek and Village creek are tributaries of Little Warrior river. Plaintiff's land was located down the river, between five and seven miles distant from the mouth of Five Mile creek, and two miles distant from the mouth of Village creek. Plaintiff owned the surface of the lands alleged in the complaint as belonging to him. The minerals underneath belonged to another party. On Prude Branch, which flowed into Five Mile creek, the defendant operated a coal washer of 400 tons capacity per day. The washer was near the defendant's coal mine. The coal was carried from defendant's mine and put into the washer after being ground up, and was subjected to the action of water, which separated the coal from the impurities in it, and the water and impurities flowed from the washer back into Prude Branch. The washer was constructed on the branch in 1897. There are 10 other coal washers belonging to other companies, located on Five Mile creek and its tributaries, and 5 on Village creek. All of them were constructed in a period ranging from 1893 to 1900. The capacity of all the washers on Five Mile creek and its tributaries, including defendant's washer, was 7,500 tons daily. The complaint does not refer to any washer except the defendant's. It is averred in the complaint that Little Warrior river naturally furnished a large supply of constantly flowing, pure and wholesome water; that much of plaintiff's land is overflowed by the river. It further shows that defend-

[Tutwiler Coal, Coke and Iron Co. v. Nichols.]

ant placed or caused to be placed in the channel of the river, or the tributaries thereof, above plaintiff's land, large quantities of waste, refuse, and poisonous matter from its mines or other industries, and that said waste, refuse and poisonous matter was carried by the water of the river down to and deposited on plaintiff's land, rendering the land less productive, more difficult to cultivate, polluting the stream, etc.

The demurrer filed to the amended complaint was overruled. The overruling of the demurrer is assigned as error, but the appellant it its brief only insists on the seventh ground of the demurrer to the third count. Construing the count as a whole, it is obvious that the demurrer was not well made. The principles of law which underlie and control the case in its main features have been so explicitly stated and elaborately discussed in the cases of *Tennessee Coal, Iron & Ry. Co. v. Hamilton,* 100 Ala. 252, 14 South. 167, 46 Am. St. Rep. 48; *Drake v. Lady Ensley Coal, Iron & Ry. Co.,* 102 Ala. 501, 14 South. 749, 24 L. R. A. 64, 48 Am. St. Rep. 77, and in the cases referred to in those cases, that we deem it unnecessary to enter again upon a discussion of them.

The case was tried on the general issue and a plea of the statute of limitations of one year filed by the defendant. The evidence was in conflict upon the question as to whether the washer of the defendant caused any damage to the plaintiff and also upon the extent of the damage. The action is case, and with respect to the statute of limitations it falls under subdivision 6 of section 2801 of the code of 1896. Damages which accrued more than a year prior to the commencement of the suit are not recoverable. "But much latitude and discretion are allowed to juries in the separation of damages accruing within the 12 months from those suffered before that time."—*Hughes v. Anderson,* 68 Ala. 280, 44 Am. Rep. 147; *Stein v. Burden,* 24 Ala. 130, 60 Am. Dec. 453; *Drake v. Lady Ensley Coal, Iron & Ry. Co.,* 102 Ala. 501, 14 South. 749, 24 L. R. A. 64, 48 Am. St. Rep. 77; *Rountree v. Brantley,* 34 Ala. 544, 73 Am. Dec. 470; *Polly v. McCall,* 37 Ala. 20; *Central of Georgia Ry. v. Windham,* 126 Ala. 552, 28 South. 392.

The action was commenced August 7, 1902, and the plaintiff could recover for only such damages as he suffered within the 12 months prior to that date; but evidence of the condition of the streams prior to the 12 month period and subsequent to the commencement of the suit was relevant and competent, for the purpose of showing the effect of the deposits, if any, on the land and in the river.—*Stein v. Burden, supra; Polly v. McCall, supra; C. of G. Ry. v. Windham, supra.*

The evidence of the plaintiff with reference to the kind of crops that he raised on the lands and their value was competent, as tending to show the nature and character of the land and what it was adapted to, as shedding light on the question of its value.

In estimating plaintiff's damages, comfort of occupation of the lands was proper to be considered by the jury; hence, if the stream was polluted by the defendant's act, it was competent to show whether the health of plaintiff's family had been affected. This was within the allegations of the complaint.—*Tenn. Coal, Iron & Ry. Co. v. Hamilton, supra.* It was also competent in this respect to show the odor of the river, if any.

Notwithstanding the fact that the plaintiff had no title in fish in the stream until they were caught, it was competent and relevant evidence that the fish had decreased in the stream and that plaintiff's catch had not been as great since the operation of the washer; also that dead fish were discovered in the stream. This result, of course, must have been traced to the pollution of the stream, or it would not benefit plaintiff's case; but this was not within the objection made by the defendant.

If the brief of counsel makes it sufficiently clear that the eleventh assignment of error is insisted upon, it is sufficient answer to it that the motion to exclude the evidence rested in the discretion of the court. Where objection is not made to the evidence or to the question calling for it, it is not a matter of right in the party against whom it is given to have the evidence excluded on motion.—*Payne v. Long,* 121 Ala. 385, 25 South. 780; *Billingslea's Case,* 96 Ala. 126, 11 South. 409; *McCalman Case,*

[Tutwiler Coal, Coke and Iron Co. v. Nichols.]

96 Ala. 98, 11 South. 408.  Moreover, the evidence of the plaintiff showed that, while the river did not touch the 20 acres purchased of Elizabeth Nichols, yet this 20 acres adjoined the other lands and the whole formed one farm. and the river did run through a part of each of the other tracts.  This, we think, rendered the deed from Elizabeth Nichols conveying 20 acres of land to plaintiff competent.

This brings us to the consideration of the charges refused to the defendant.  It cannot be affirmed as a matter of law that the defendant did not place or cause to be placed in the river or the tributaries thereof debris and refuse matter thrown off from washing the coal by the washer, and on all other questions the evidence was in conflict; hence the affirmative charge was properly refused.

Charge 1, refused to the defendant, was formulated with respect to section 5587 of the code of 1896, which makes it a misdemeanor for any person by means of. dams, traps, or other obstruction to prevent the passage of fish up the waters of any river or creek in this state. The statute provides that it shall not be so construed as to prevent the introduction of traps, or other means of catching fish in such rivers or creeks.  There is no evidence in the case tending to show that the plaintiff's trap was constructed in violation of the law.  The charge was abstract, and for this reason, if for no other, was properly refused.

Charge 2, refused to the defendant, invoked the statute of limitations of one year.  We see no obejction to the verbal construction of the charge, nor was it abstract. One year is the limitation to recoverable damages in the action.  The court erred in refusing the charge.—*Stein v. Burden*, 24 Ala. 130, 60 Am. Dec. 453; *Polly v. McCall*, 37 Ala. 20; *C. of G. Ry. Co. v. Windham, supra-*

Charge 3 of the defendant's series was obviously bad and there was no error in the refusal of it.  The evidence did not tend to show that plaintiff lost a crop or crops by the deposits or overflow; but its tendency was to show that by the deposits and overflow the land was rendered less fertile and productive, so that the yield was dimin-

ished. This tended to show permanent injury to the land, and if the land was permanently injured in that way, plaintiff's damages should have been based on such permanent injury. In this view of the case charge 4, refused to defendant, should have been given.

We have considered all the errors assigned that have been insisted upon in the brief of counsel for appellant except the overruling of the motion for a new trial. As the judgment must be reversed for the error in refusing charges 2 and 4, we deem it unnecessary to consider that assignment of error.

Reversed and remanded.

TYSON, SIMPSON, and ANDERSON, JJ., concur.